UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  4:16-CR-374 JAR/PLC |
| | ) |
| ROLAND HOEFFENER, | ) |
| | ) |
| Defendant. | ) |

**Report and Recommendation**

This matter is before the Court on Defendant's Motion to Suppress Statements, Admissions and Confessions [ECF No. 28].  The Court held an evidentiary hearing on Defendant's motion.  Based upon the arguments of the parties and the evidence adduced at the hearing, the Court recommends denial of Defendant's motion.[1]

**Background**

The Government charged Defendant with violating 18 U.S.C. § 2252A(a)(2) by "knowingly receiving" over the internet videos and images of child pornography (Count I); and violating 18 U.S.C. § 2252A(a)(5)(B) by "knowingly possess[ing]" two storage devices containing videos and images of child pornography (Counts II and III) [ECF Nos. 56 and 57]. Each count includes a list identifying four visual depictions of a minor allegedly engaging in sexually explicit conduct.  Id.  Defendant filed a motion to suppress statements, admissions and confessions [ECF No. 28].  As grounds for the motion, Defendant contends that a St. Louis County Police Department detective, Sergeant Adam Kavanaugh, used "coercion and false promises to induce" Defendant to make a statement.  Defendant also argues that he invoked his right to counsel during questioning by Sergeant Kavanaugh.  Finally, Defendant asserts that

---

[1] This matter is before the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. Section 636(b).

police officers failed to provide a <u>Miranda</u> warning to Defendant at the time he was placed in custody. In his post-hearing memorandum, Defendant focuses on Defendant's custodial status at the time of his statements and the absence of a timely <u>Miranda</u> warning.

### **Findings of Fact**

Adam Kavanaugh, a sergeant with the St. Louis County Police Department, assisted Dustin Partney, a detective whom Sergeant Kavanaugh supervised in the St. Louis County Police Department's Special Investigations Unit, with the execution of a search warrant at Defendant's home. Others involved in the search at various times included officers from St. Louis County's Tactical Operations Unit (referred to as the "SWAT team"), St. Louis County Police Department Detective Jeff Roediger, and two United States Secret Service agents, Bradley Beeler and Bryan Hushack. The execution of the warrant took place between 7 and 8:00 pm. Upon arrival at Defendant's home, the search participants learned that neither Defendant nor his wife were present. Sergeant Kavanaugh, using a previously-obtained telephone number, called Defendant and advised him that police officers were at his residence and requested that Defendant return. Defendant and his wife arrived at their home between approximately 8:00 and 8:30 p.m., not more than twenty minutes after Sergeant Kavanaugh's call.

At the time Defendant arrived, the SWAT team had departed, leaving a uniformed detective to collect evidence, the two Secret Service agents, Sergeant Kavanaugh, and Detective Partney. Sergeant Kavanaugh spoke with Defendant in front of Defendant's home, informing Defendant that the officers executed a search warrant and requesting that Defendant "sit down in [Sargeant Kavanaugh's] vehicle and discuss that further with him."[2] Defendant voluntarily entered Sergeant Kavanaugh's unmarked vehicle and sat in the front seat. Defendant was not handcuffed while in the closed vehicle or otherwise restrained.

---

[2] Hr'g Tr. at 273.

Sergeant Kavanaugh recorded the conversation with Defendant that occurred in the vehicle.[3] He described Defendant as inquisitive but polite and cooperative.[4] Sergeant Kavanaugh denied that Defendant was a suspect, under arrest, or in custody at the time the conversation commenced. Sergeant Kavanaugh discussed with Defendant the reason that police executed the search warrant and specifically informed him, he "was there for the file sharing of child pornography."[5]

Prior to Defendant entering the car, Sergeant Kavanaugh did not read Defendant his Miranda rights. While in Sergeant Kavanaugh's vehicle, Defendant confessed that for the past four or five years he had used uTorrent to download pictures and movies of child "porn[ography] . . . [involving] everything from five" years old and up, which he viewed.[6] Defendant's statements occurred approximately five minutes after he started talking with Sergeant Kavanaugh.[7] Following Defendant's statement that he had downloaded child pornography, Sergeant Kavanaugh decided he would arrest Defendant.[8] At no time, while Sergeant Kavanaugh and Defendant were in Sergeant Kavanaugh's vehicle did Sergeant Kavanaugh read Defendant his Miranda rights. Sergeant Kavanaugh testified that Defendant was free to leave during the "car conversation" but Defendant did not ask to "get out of the car."[9] Further

---

[3] During the hearing on Defendant's motion the Government introduced a transcript of the contemporaneous audio recording of the in-vehicle conversation between Sergeant Kavanaugh and Defendant. See Gov't Ex. 8a.

[4] Mot. Hr'g Tr. at 273, 275.

[5] Mot. Hr'g Tr. at 275.

[6] Gov't Ex. 8a, at 3, 6-9.

[7] Mot. Hr'g Tr. at 291-92.

[8] Mot. Hr'g Tr. at 291-92, 300.

[9] Mot. Hr'g Tr. at 299.

elaborating on cross-examination, Sergeant Kavanaugh stated that after Defendant admitted to downloading child pornography, Defendant was not restrained but "he would not be free to leave."[10]

Towards the end of the in-vehicle conversation, Sergeant Kavanaugh asked Defendant if there had ever been accusations that he touched a child. Defendant acknowledged that there had been an accusation involving a neighbor child, however Defendant denied touching any child. In response, Sergeant Kavanaugh asked if Defendant would agree to a polygraph test. Defendant replied, "[n]o problem."[11] Thereafter, Sergeant Kavanaugh drove with Defendant to the St. Louis County Police Department in Clayton. After some random conversation while enroute to Clayton, Defendant stated, "so you guys gonna arrest me?"[12] Sergeant Kavanaugh responded, "[w]ell, probably."[13] Defendant replied, "[o]kay."[14]

Following Defendant's transport to the St. Louis County Police Department, Agent Beeler administered a polygraph. Prior to administering the polygraph, Agent Beeler provided Defendant with a "warning of rights and consent to speak" form ("form").[15] Agent Beeler read the following warning contained in the form to Defendant:

Before I ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in a Court, or other proceedings.

---

[10] Mot. Hr'g Tr. at 300.

[11] Gov't Ex. 8a at 14.

[12] Gov't Ex. 8a at 17.

[13] Gov't Ex. 8a at 17.

[14] Gov't Ex. 8a at 17.

[15] Gov't Ex. 10a.

4

> You have the right to talk to a lawyer for advice before I question you and to have him with you during questioning.
>
> If you cannot afford a lawyer and want one, a lawyer will be appointed for you by the Court.
>
> If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time.[16]

(Footnote added.) Agent Beeler then had Defendant state out-loud the following, which was printed on the form immediately after the above statements: "I have read this statement of my rights and it has been read to me, and I understand what my rights are. I voluntarily waive my rights and I am willing to answer any questions at this time."[17] Agent Beeler also starred and underlined the line on the form that advised Defendant he had the right to stop questioning at any time.[18] Thereafter, Defendant signed the form.[19]

During the post-warning polygraph pre-test, which was not recorded, Defendant stated, among other things, that he had downloaded approximately 10,000 images and/or movies of child pornography.[20] During the actual polygraph, which was also not recorded, Agent Beeler asked Defendant whether he had any "undisclosed sexual contact with a minor." The results of the polygraph were inconclusive.[21]

At the conclusion of the polygraph examination, Sergeant Kavanaugh videotaped Defendant answering questions. Prior to questioning, Sergeant Kavanaugh reminded Defendant

---

[16] Gov't Ex. 10a.

[17] Gov't Ex. 10a; Mot. Hr'g Tr. at 244.

[18] Gov't Ex. 10a; Mot. Hr'g Tr. at 244-45.

[19] Gov't Ex. 10a; Mot. Hr'g Tr. at 244.

[20] Mot. Hr'g Tr. at 249.

[21] Mot. Hr'g Tr. at 250.

5

that Agent Beeler read Defendant <u>Miranda</u> rights and stated "[i]t all still applies."[22]  The transcript of the videotaped interview demonstrates the following exchange:

> Kavanaugh: . . . Now we talked at the house, you know, and I explained to you um, you know, what was going on.  You weren't under arrest.  I didn't take you out in handcuffs, right.  I didn't threaten you, right.
>
> Defendant: Um hm.
>
> Kavanaugh: I didn't drag you into the car and tell you, you had to go with me, right.  You came down here voluntarily with me, right?
>
> …
>
> . . . Um so um, we uh we know that you, you admitted that you have uTorrent, correct?
>
> Defendant: Yes
>
> Kavanaugh: And that you use that to download child pornography, correct?
>
> Defendant: Yes
>
> Kavanaugh: Okay.  And uh I think with [Agent Beeler], you said probably over the years, it's been probably 10 to 20,000 pictures, videos . . . .
>
> Defendant:  I don't got that much, no.
>
> Kavanaugh: Okay.
>
> Defendant: He . . . he assumes it's that much, I don't think it's that much.
>
> Kavanaugh: Okay, okay, um but there is some on your computer.  You told me, maybe, you know a dozen or so . . . .
>
> Defendant: In a documents file, yeah.[23]

(Footnote added.)  During the video-taped interview, which lasted between 30 and 45 minutes, Defendant was cooperative and polite.

---

[22]  Tr. of Videotaped Recording of Def., Gov't Ex. 9a, at 1.

[23]  Tr. of Videotaped Recording of Def., Gov't Ex. 9a, at 1-2.

**Conclusions of law**

**A.  Custodial status at time of initial questioning**

Defendant contends that he was in custody "prior to any questioning" by law enforcement and therefore, the absence of a Miranda warning before the commencement of the in-vehicle discussion requires suppression of any statements made in Sergeant Kavanaugh's vehicle.  The Government denies that Defendant was in custody at the time of his initial statement or thereafter while in the vehicle.

It is well-settled that "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him in 'custody.'"  Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam).  The "ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam) (internal quotation marks and citation omitted).  To answer this question, a court looks "at the totality of the circumstances while keeping in mind that the determination is based 'on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'"  United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004) (en banc) (quoting Stansbury v. California, 511 U.S. 318, 322-23 (1994) (per curiam)).  To assist courts in assessing the circumstances, the Eighth Circuit has articulated indicia of custody, including the following:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect

was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990).

In support of his motion to suppress his statements, Defendant addresses each of the Griffin factors. As an initial matter, the Eighth Circuit notes that the first three Griffin factors may be considered "mitigating factors" and the second three "coercive factors." United States v. Laurita, 821 F.3d 1020, 1024 (8th Cir. 2016) (citation omitted). However, the Eighth Circuit cautions that these factors "'are not exclusive and custody cannot be resolved merely b[y] counting up the number of factors on each side of the balance and rendering a decision accordingly.'" Id. (quoting United States v. Flores-Sandoval, 474 F.3d 1142, 1147 (8th Cir. 2007)).

With respect to the first Griffin factor, Defendant states that "although he was told he was not under arrest, Defendant was never specifically told that the questioning was voluntary and he was free to leave and refuse to cooperate." While it is accurate that

> informing a suspect his participation in questioning is voluntary and that he is free to leave can be an important mitigating factor, . . . the "opposite inference" -- that a suspect not being told he is free to leave during police questioning is a strong indication he was in custody -- does not necessarily follow.

Id. The "touchstone" of the inquiry is whether a defendant "was restrained as though he were under formal arrest." Id. (internal quotation marks omitted) (quoting United States v. Lowen, 647 F.3d 863, 868 (8th Cir. 2011)).

Nothing in the record supports a finding that Defendant was restrained as though he were under formal arrest. Defendant voluntarily entered Sergeant Kavanaugh's vehicle. Defendant sat in the front seat of the vehicle and willingly engaged in a polite and cordial conversation. Defendant was not handcuffed or otherwise restrained. As in Laurita, supra, "[a]lthough they did not expressly tell [defendant] his participation was voluntary or that he was free to leave, nothing

8

about the circumstances or the investigators' actions indicated otherwise." 821 F.3d at 1024 (district court's suppression of statements reversed where there was no evidence of restraint, the questioning was brief, and the defendant voluntarily agreed to speak and willingly explained how he accessed child pornography).

With respect to the second Griffin factor, Defendant appears to focus on the location of the questioning - - Sergeant Kavanaugh's car.  Although Defendant's freedom of movement may have been somewhat restricted because he was questioned in a police car, he was not handcuffed or otherwise restrained.  The mere fact that Defendant and Sergeant Kavanaugh engaged in a conversation while seated in an unmarked police car is insufficient to support a finding of restraint.  See United States v. Johnson, 64 F.3d 1120, 1125-26 (8th Cir. 1995); see also United States v. Thunderhawk, 799 F.3d 1203, 1205-06 (8th Cir. 2015) (rejecting an assertion of coercive police activity where, seated in the front seat of an agent's car, the defendant made incriminating statements after twenty or twenty-five minutes of non-coercive questioning).

With respect to the third Griffin factor, Defendant argues that he was in custody or believed he was in custody because he "acquiesced to the police dominated questioning and did not initiate any contact with police."  The record, however, establishes that Defendant willingly entered the car to discuss the search and voluntarily responded to questions.  Moreover, there is no evidence that the atmosphere outside Defendant's house was such that Defendant acquiesced because of a coercive or police dominated environment.  Sergeant Kavanaugh was in plain clothes, in an unmarked car and engaged in polite conversation.  Sergeant Kavanaugh's vehicle was parked outside Defendant's house.  Aside from Detective Partney, no other police officers were visible outside or near the vehicle at the time Defendant agreed to enter the vehicle.  In any event, as the Eighth Circuit articulated in LeBrun, supra, the type of analysis Defendant employs

9

is flawed: "[T]he critical inquiry is not whether the interview took place in a coercive or police dominated environment, but rather whether the defendant's 'freedom to depart was restricted in any way.'" 363 F.3d at 720 (quoting Mathiason, 429 U.S. at 495). Here, there is no evidence that Defendant tried to avoid the conversation or remove himself from the car or that either Sergeant Kavanaugh or any other law enforcement personnel, either through words or behavior, prevented Defendant from leaving. See United States v. Giboney, 863 F.3d 1022, 1027-28 (8th Cir. 2017) (evidence that the defendant stated he was "fine" with answering questions weighed against a finding of custody).

With respect to the fourth Griffin factor, Defendant claims that Sergeant Kavanaugh "employed strong arm tactics by utilizing the SWAT team's presence and forced entry to the home." Defendant further argues that, in his counsel's experience, "similar warrants in other counties are executed in a knock and talk fashion." Defendant's argument is entirely misplaced. The fourth Griffin factor clearly relates to stratagems "employed during questioning." There is no dispute that the SWAT team vacated the home by the time Defendant returned. No SWAT team officers were involved in questioning or even present when Defendant willingly engaged in discussion with Sergeant Kavanaugh. Accordingly, the record does not support a finding of use of deception or strong-arm tactics in questioning.[24]

Defendant argues that the fifth Griffin factor (police dominated atmosphere) is demonstrated by the content of "the transcript and audio recording of Defendant's interrogations" in Sergeant Kavanaugh's vehicle. To the contrary, a review of the audio and

---

[24] In Defendant's pre-hearing motion to suppress statements and memorandum in support, Defendant claims that his statements were based on "coercion and false promises" and made "after the invocation of counsel." The record does not support a determination that Sergeant Kavanaugh used false promises either about the nature of law enforcement interest in Defendant or about leniency in exchange for cooperation. In addition, the record does not contain any evidence that Defendant either invoked his right to counsel or was dissuaded from doing so by threats or promises.

transcript reveals otherwise. Sergeant Kavanaugh's tone of voice was measured and calm. Other than the fact that Sergeant Kavanaugh is, in fact, a police officer, there is nothing about the transcript and recording of the conversation that suggests the type of domination that would convert the initial discussion into a custodial interrogation. It was reasonable for Sergeant Kavanaugh to explain what was happening inside Defendant's house and ask Defendant some initial questions. No other officers were present during the in-vehicle discussion. Nor is there any evidence that other officers were visible outside. Sergeant Kavanaugh was in plain clothes and in an unmarked car. He did not have a weapon drawn.

Finally, Defendant contends that he establishes the sixth Griffin factor because he was arrested "at the end of questioning." Approximately three-quarters through the in-vehicle conversation, Sergeant Kavanaugh asked Defendant if he would take a polygraph test. Defendant agreed and willingly accompanied Sergeant Kavanaugh to the St. Louis County Police Department to undergo the polygraph examination. The Secret Service agent read Defendant his Miranda rights prior to administering the polygraph examination. Following the polygraph examination, Defendant voluntarily participated in a videotaped interview after he was reminded that his Miranda rights were still in effect. Only after Defendant received Miranda warnings and made multiple admissions was he arrested. Moreover, even if the sixth factor weighs in favor of a finding of custody, other circumstances are more compelling support of the reverse conclusion. See Giboney, 863 F.3d at 1029 (the presence of the sixth Griffin "factor alone does not establish that the interview was custodial"). Defendant confessed within approximately five minutes of the initiation of the in-vehicle discussion with Sergeant Kavanaugh. See LeBrun, 363 F.3d at 726 ("We place substantial weight on the fact that [defendant] confessed after a mere thirty-three minutes"). See also United States v.

11

Muhlenbruch, 634 F.3d 987, 997 (8th Cir. 2011) (the defendant's confession in a "mere seven-and-a-half minutes" into the interview was a compelling fact supporting "non-custody"). Because, based on a totality of circumstances, the record does not support a determination that Defendant was restrained to a degree associated with a formal arrest, the Court concludes Defendant was not in custody and entitled to Miranda warnings prior to his in-vehicle confession.

### B. Impact of Sergeant Kavanaugh's unarticulated decision to arrest Defendant

Defendant contends that Sergeant Kavanaugh's decision to arrest Defendant following Defendant's initial admission rendered their in-vehicle discussion a custodial interrogation. The Government does not expressly address Defendant's argument but notes correctly that the applicable standard for a determination of custody is "what a reasonable person, not what law enforcement or the defendant, felt."

The Supreme Court squarely rejected Defendant's argument in Berkemer v. McCarty, 468 U.S. 420 (1984). In Berkemer, the arresting officer in a traffic stop apparently decided as soon as the defendant exited his car that the defendant would be taken into custody and charged with an offense. Id. at 423. That intention, however, was not communicated to the defendant. Id. Addressing the relevance of the officer's intention to a determination of custodial status, the Court stated: "[a] policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Id. at 442. See also Stansbury, 511 U.S. at 324 ("It is well settled, then, that a police officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question whether the individual is in custody for purposes of Miranda"). Thus, the fact that Sergeant Kavanaugh

decided to arrest Defendant after Defendant confessed in the vehicle is not germane to a resolution of whether Defendant was in custody either at the commencement of the interview or at the time he confessed to downloading child pornography.

### C. Post Miranda statements

Defendant argues that Defendant's statements during a polygraph examination as well as a subsequent video-taped interview conducted by Sergeant Kavanaugh must be suppressed pursuant to Missouri v. Seibert, 542 U.S. 600 (2004). Defendant concedes that these statements occurred following administration of Miranda warnings. However, Defendant contends that the law enforcement officers employed a "question-first" technique proscribed in Seibert to elicit incriminating statements. In response, the Government asserts that the record contains no evidence that "law enforcement designed or calculated a circumvention of Miranda." Rather, the Government notes, Defendant's statements after the "proper advice of rights were voluntary."

It is well-settled that if a suspect knowingly and voluntarily waives his Fifth Amendment rights after receiving a Miranda warning, his inculpatory statements are admissible at trial. See Oregon v. Elstad, 470 U.S. 298, 309 (1985). If, however, an officer questions a suspect and intentionally delays reciting a Miranda warning to elicit a confession, post Miranda statements are inadmissible. United States v. Torres-Lona, 491 F.3d 750, 757-58 (8th Cir. 2007) (discussing Seibert). "[W]here there has been no such calculated effort, the admissibility of a post warning statement should continue to be governed by Oregon v. Elstad." Id..

"Where a defendant alleges that his post Miranda statement was obtained in the course of a two part interrogation, the prosecution bears the burden of establishing by a preponderance of the evidence that the failure to provide warnings at the outset of [the] interrogation was not deliberate." Id. at 758. As an initial matter, the Court has determined that Miranda warnings

13

were not required because at the outset of the in-vehicle discussion, Defendant was not in custody. Nor was Defendant in custody when approximately five minutes into the discussion Defendant confessed to downloading child pornography. The content of Sergeant Kavanaugh's questions as well as his tone and demeanor do not reflect a calculated effort to side-step <u>Miranda</u>. Defendant voluntarily agreed to enter Sergeant Kavanaugh's car, willingly engaged in a conversation with Sergeant Kavanaugh, and without threats, promises or any coercive behavior casually described the content of his computer. Because Defendant was not in custody, <u>Miranda</u> warnings were not required. "Thus, <u>Seibert</u> has no bearing on this case," and the Court declines to suppress Defendant's statements on this basis. See <u>Thunderhawk</u>, 799 F.3d at 1207.[25]

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Statements, Admissions and Confessions [ECF No. 28] be **DENIED**. The parties are advised that they have **fourteen (14) days** in which to file written objections to this Recommendation pursuant to 28 U.S.C. Section 636(b)(1). Failure to file timely objections may result in waiver of the right to appeal questions of fact.

*Patricia L. Cohen*
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of March, 2018

---

[25] Defendant has not contended that his post <u>Miranda</u> statements were involuntary. Although the Court declines to address an unraised issue, the record supports a finding that Defendant's <u>Miranda</u> waivers were voluntary, knowing and intelligent, see, e.g., <u>Moran v. Burbine</u>, 475 U.S. 412 (1986), and Defendant's statements were voluntary, see, e.g., <u>United States v. Williams</u>, 760 F.3d 811, 815-16 (8th Cir. 2014).