UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16CR0374 JAR |
| | ) | |
| ROLAND HOEFFENER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Comes now the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Colleen Lang, Assistant United States Attorney for said District, and files its sentencing memorandum:

On September 20, 2018, the Defendant pled guilty to three counts in a three count superseding indictment, these charges included Receipt of Child Pornography and Possession of Child Pornography. The parties do not have an agreed upon sentencing recommendation, nor do they have an agreed upon guideline's range, and either party may ask for a sentence that is above or below the guideline range in this case. The first count carries a mandatory minimum sentence of 60 months in prison. The government believes the defendant's Total Offense Level is thirty-one (31), which is a guideline sentence of 108 to 135 months imprisonment. After weighing the circumstances of this case, along with other similarly situated defendants in the past, the government is asking for a guideline sentence within the Total Offense Level of thirty-one (31).

1

The Government respectfully requests that the Court sentence the defendant to a sentence to 132 months in prison.

**A. Facts of the Case.**

The following are the facts of this case:

i. Peer-to-Peer Investigation.

The charges stem from an authorized undercover operation by the St. Louis City Police Department on the BitTorrent peer-to-peer network. On December 12, 2012, Detective Bobby Baine located an IP address that possessed child pornography while using software that allowed him to search peer-to-peer networks for IP addresses that that possessed or shared known images of child pornography. Det. Baine identified that the computer that possessed the child pornography was located in the St. Louis, Missouri area. Det. Baine was able to successfully complete and download a file containing multiple images of female children in a lascivious display of their genitals. AT&T Internet Services responded to Det. Baine's subpoena, that the IP address in question belonged to Roland Hoeffener, the defendant, at 625 Mildred Avenue, Webster Groves, Missouri.

ii. Search Warrant and Statement.

On April 29, 2013, Det. Dustin Partney of the St. Louis County Police Department applied for and received a state search warrant for the defendant's residence. The search warrant was executed by law enforcement members of the Internet Crimes Against Children task force on April 30, 2013. Sgt. Adam Kavanaugh spoke with the defendant.

The defendant voluntarily agreed to speak with Sgt. Kavanaugh in his unmarked police

2

car. It was recorded by audio tape. The defendant told Sgt. Kavanaugh that he had about four or five computers and had lived in his home for twenty-five years. He knew that he had secure Wi-Fi internet service through AT&T and had used UTorrent, a peer-to- peer network, to download music and adult pornography. Sgt. Kavanaugh told the defendant based on their investigation, they knew that some of the downloads contained child pornography.

Defendant admitted that some of his peer-to-peer downloads did contain child pornography. Defendant stated he would occasionally search for child pornography using terms such as, "PTCH" and "teen." Defendant told Sgt. Kavanaugh that the child pornography would be located on his main computer in the basement. He said he had been looking at child pornography for four to five years and only looks at children between the ages of eight to ten years old. Defendant agreed to go to the police station with Sgt. Kavanaugh for a polygraph.

United States Secret Service Agent Brad Beeler met the defendant in a police interview room and advised him of his *Miranda* rights. SA Beeler then initiated a polygraph pre-test interview on the defendant. Defendant told SA Beeler that he first accessed child pornography ten years earlier by utilizing message boards or internet search engines. He began using peer-to- peer networks five years ago. He believed he has download as many as 10,000 files of child pornography including images of children as young as one-year old. Most of the children in the child pornography he viewed were around the age of eight to twelve years old. The defendant stated while in Nigeria for business in 1990, he had sex with a girl that he believed to be around thirteen or fourteen years old. The polygraph was administered and came back as inconclusive.

3

During the post test questions to the polygraph, the defendant admitted to inappropriate sexual contact with his juvenile daughter in 1975 when she was two (2) years old. He rubbed her "clit" in the bathtub with his finger one time. He also admitted to having inappropriate contact with another two (2) year old who was a friend of his daughters. He digitally penetrated her, under the clothes, while she was seated on his lap. Further, he mentioned that he touched his three (3) year old grandson's penis to re-direct the boy's penis towards the toilet (the child was urinating and missing the toilet bowl.) While "re-directing" the boy's penis, he thought to himself that his grandson "had a nice or cute penis." The boy is now ten years old so this incident happened about seven years ago. Sgt. Kavanaugh re-interviewed the defendant while video recording the conversation. The defendant re-stated these incidents with children for Sgt. Kavanaugh.

    iii.    <u>Forensics</u>.

On August 5, 2015, detectives with the St. Louis County Police Department dropped off the computer evidence with the Regional Computer Crimes Education and Enforcement Group. In February of 2016, Det. Steve Grimm of the Regional Computer Crimes Education and Enforcement Group conducted a forensic examination of all of defendant's computers, hard drives, computer-related storage devices, and cell phones. Det. Grimm is a qualified forensic examiner. Det. Partney had seized 48 pieces of computer equipment from the defendant's home for Det. Grimm to analyze. It took Det. Grimm several weeks to complete the analysis. Det. Grimm found videos and images of child pornography on twelve (12) of these computer devices. Det. Grimm also located encrypted files on several of the computer

4

devices. Det. Grimm could see that the encrypted areas contained large amounts of data, but he was unable to open these encrypted files and, thus, still does not know what they contain. Det. Grimm also located evidence of peer-to-peer networks, computer wiping software, search terms related child pornography, and child erotica on the computer devices.

First, Det. Grimm looked at the Defendant's Toshiba Laptop Computer. Det. Grimm found over 300 images of unallocated child pornography, 3 unallocated video files of child pornography, including a bondage video, animated drawings depicting child pornography, and child erotica. Further, on the computer were the following software applications: CCleaner (used to delete files), TOR browser (which searches the dark web), and Best Crypt (used to encrypt files). Also on the computer was a link to a "Hidden Wiki" page called "Hard Candy" that lists the location of child pornography websites on TOR. Det. Grimm located several search terms for child pornography on the computer including: "10 yo sucking coc," "age first taste cum," "boy cum," "child sex tourist," "child sex vacation stories," "his boy cum tasted sweet," "child sex mexico," "child sex brothels," "man boy love," "the hidden wiki," "true pedo," "pedo stories," "nude kids," and "kids cum." Images of child pornography located on the defendant's laptop computer were charged in Count One of the superseding indictment. The charged images the defendant received from the internet, depict horrific images of prepubescent children performing different sex acts on adults and there is even an image of a child in bondage.

Second, Det. Grimm did forensic analysis on the defendant's Maxtor Brand Network Attached Storage Device. This device is charged in Count Two of the indictment. This device

5

contained over 2600 images and 3 videos of child pornography. The images and videos of child pornography were of prepubescent minor children, both males and females, engaged in sexually explicit conduct, and some portrayed sadistic or masochistic conduct, or other depictions of violence. Further, Det. Grimm found several files that were encrypted and he could not open.

Third, Det. Grimm analyzed a Cavalry Brand Network Attached Storage Device that was produced outside of the State of Missouri and traveled in interstate and foreign commerce. This device contained 335 videos and 37 images of child pornography.

Fourth, Det. Grimm analyzed a Buffalo Brand Network Attached Storage Device with over 3000 images of child pornography and 22 videos of child pornography. The images and videos of child pornography were of prepubescent minor children, being sexual abused, and some portrayed sadistic or masochistic conduct, including bondage or other depictions of violence. Many of the files of child pornography on this device had been saved to it between April 18, 2013, and April 29, 2013. The images on this device were charged in Count Three of the superseding indictment. There was also 15 GB of encrypted files on the device that could not be accessed.

Fifth, Det. Grimm looked at the defendant's HP Desktop computer. This computer contained TOR software, Shredder software (a program that deletes computer data), 190 animated drawings depicting child sexual abuse, EMULE peer-to-peer software, and 8 images of allocated child pornography. Further Det. Grimm discovered search terms related to child pornography including "age first taste of cum," "boy eats cum," "boy sucks boy cum,"

6

"Vicky first taste cum," "valya videos," "jenny 9yo torrent," and "tara pedo." There were 26 GB of encrypted files on this computer.

Det. Grimm also found unallocated child pornography on the following of defendant's devices: Seagate Brand hard drive, Samsung Brand hard drive, Kingston Brand SD Card, Buffalo Brand External Hard Drive, and an unknown brand Thumb Drive. Det. Grimm found binary duplicates on several backup drives that belonged to the defendant.

In summary, the Defendant knowingly possessed more than thirty-four thousand (34,000) images of child pornography where each video is considered to be equivalent of 75 images. Many of these images and videos were of prepubescent minor children, often under the age of 12, engaged in sexually explicit conduct, and some portrayed sadistic or masochistic conduct, bondage or other depictions of violence. It is unknown, what is located on the defendant's many encrypted computer devices, as law enforcement was unable to access them and the defendant did not provide the government his access.

### B. Applicable United States Sentencing Guidelines Characteristics

In the guilty plea agreement, the defendant did not agree to any of the appropriate specific sentencing characteristics or enhancements under the United States Sentencing Guidelines (hereafter "USSG").  During the plea, the defendant only accepted responsibility for the elements of the crimes as laid out in the indictment. The government believes, and intends to prove at sentencing, that the following sentencing guideline specific offense characteristics apply under USSG Section 2G2.2.

7

First, the defendant's base offense level is twenty-two (22) as found in USSG Section 2G2.2(a)(2). USSG Section 2G2.2 applies to the crimes of Receipt and Possession of Child Pornography. The base level for the crime of Receipt of Child Pornography is twenty-two (22). A two (2) level reduction is taken off the base offense level under Section 2G2.2(b)(1) because the defendant's conduct was mostly limited to receiving images of child pornography. While the defendant should have known from the warnings on the BitTorrent network, that he was automatically sharing by participating on the network, there is not actual concrete evidence or statements from the defendant that he "knowingly" shared the images of child pornography.

The next specific offense characteristic that applies to this defendant is section 2G2.2(b)(2) which adds two (2) levels because the defendant possessed material involving "a prepubescent minor or a minor who had not attained the age of 12 years." The government will prove this enhancement at sentencing by bringing in images from the defendant's child pornography collection. It is easy to see from just looking at the images possessed by the defendant that many, if not all of the children, in the defendant's child pornography collection were under the age of twelve years old.

Next, four (4) levels are added pursuant to Section 2G2.2(b)(4) because the offense involved material that portrayed "sadistic or masochistic conduct or other depictions of violence." The images the defendant possessed showed young children in bondage, as well as, images of children's genitals being penetrated.  The term "sadistic" is not defined in the guidelines, but has been addressed by the Eighth Circuit Court of Appeals several times.  If an image depicts actual or attempted penetration, it is per se sadistic. *United States v. Belflower*, 390 F.3d 560, 562 (8th Cir. 2004). (Also see *United States vs. Damian Morgan*, 842 F.3d 1070, 1076 (8th Cir. 2016)).

8

The images and videos in defendant's collection depict actual penetration of the child victims, thus the enhancement under 2G2.2(b)(4)(A) applies.

Two (2) levels are added under Section 2G2.2(b)(6) for using a computer to receive and view the images of child pornography. The images were found on numerous computers devices in the defendant's possession.

Lastly, five (5) levels should be added pursuant to Section 2G2.2(b)(7)(D) as the defendant had well over 600 images of child pornography in his possession. After conversation, the defendant had more than 34,000 images of child pornography on the devices that law enforcement were able to access.

With the applicable specific offense characteristics, the defendant's adjusted offense level is thirty-three (33). Assuming the Court awards him two levels off under Section 3E1.1(a) for acceptance of responsibility, his total offense level is then thirty-one (31). Based on the PSR, the defendant is a criminal history category of I, so he falls within a guideline sentencing range of 108-135 months in prison. The government believes a sentence of 132 months in prison is appropriate based on the facts and circumstances of this case.

### C. The Nature and Circumstances of the Offense

The nature and circumstances of the offense are as follows:

As detailed in the facts section above, these charges stem out of law enforcement investigation for child pornography offenders on the BitTorrent Peer-to-Peer Network. Law enforcement located defendant's IP address offering child pornography on the network, which led them to his home. The defendant attempted, unsuccessfully, at motion hearings to assert that the police had illegally infiltrated his home computers to discover the child pornography, but the

searches of the home and his devices were upheld by the Court. At his home, the defendant had numerous computers and computer devices that contained child pornography. The defendant had amassed a collection of over 34,000 images after the conversion. The defendant had searched the internet with search terms like "10 yo sucking cock;" "age first taste cum;" "boy cum;" "child sex tourist;" "his boy cum tasted sweet;" " child sex brothels;" "man boy love;" and "kids cum." There is no question the defendant was looking for child pornography. A computer forenics examination showed that some of the images of child pornography had been accessed as far back as 2010 – three years before the search warrant was executed on the defendant's home. These images in the defendant's collection portrayed real children being painfully sexually abused. The titles to the files themselves reflect the content, i.e., "Chinamovie B09 Fucking OUCH!.avi" – is a video of a boy being anally raped and "Huiuko sucks and fucks-2.avi" – is a video of a prepubescent girl being raped.

     After reviewing all forty-eight computer devices seized from the defendant, Det. Grimm sent the hash values of 7,365 image files and 460 video files to the National Center for Missing and Exploited Children (hereafter "NCMEC") to identify which files contained known and unknown victims. NCMEC returned a 146 page Child Identification Report stating that the defendant's collection contained 119 known series of child pornography.

     After the defendant's arrest, he made several statements to law enforcement regarding "hands on" offense he had committed in the past. These statements were found by the Court to be given voluntarily by the defendant to law enforcement. Specifically, the defendant admitted to sexually abusing his daughter, her friend, and a Nigerian child. While all of these offenses

happened over twenty (20) years old, they show that the defendant is more than just a collector of child pornography, but is also a hands on pedophile.

In summary, the Defendant knowingly possessed more than thirty-four thousand (34,000) images of child pornography where each video is considered to be equivalent of 75 images. Many of these images and videos were of prepubescent minor children, often under the age of 12, engaged in sexually explicit conduct, and some portrayed sadistic or masochistic conduct, bondage or other depictions of violence. The defendant admitted to law enforcement that he had been looking at child pornography for at least ten years and he had viewed images of children as young as one years old.  The defendant admitted to sexually abusing young children in the past. These actions by the defendant make him deserving of a substantial prison sentence.

**B.**     **History and Characteristics of the Defendant**

According to the Pre-Sentence Investigation report the defendant grew up in Germany and Canada. He worked as a pilot and has been a United States citizen since 1975.  There is nothing in his personal history that would require some kind of mitigation or explanation for these crimes.

As the case is charged, the defendant's Total Offense Level for these crimes is thirty-one (31).  The government believes that a sentence of 132 months in prison adequately reflects the seriousness of the offense and provides just punishment for the offense.  In making a fair recommendation to the Court, the government has considered the defendant's age, all of the material presented by defense counsel, and has reviewed the evidence in this case.

**C.**     **Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to**

### **Provide Just Punishment for the Offense**

Possessing images of the sexual abuse of children is a serious offense and the guidelines reflect the seriousness of the crime. Too often child pornography is considered to be "just pictures" without the recognition that they are images of children being sexually abused and those images are then trafficked around the world on the internet. Even when the perpetrator of the original abuse is imprisoned, the images of the child's sexual abuse continue to be traded. The child's abuse never ends because the images of the abuse are present in hundreds of locations. *See United States v. Miller*, 665 F.3d 114, 123 (5th Cir. 2011). The Court in *Miller* wrote:

> "The district court in this case was cognizant of the undeniable fact that real children are actually being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by Miller and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way. If a handful of pornographic images taken twenty years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today. No other child would be raped or sodomized or otherwise violated to produce pornographic images. Tragically, the reality is that there is a huge demand for "fresh" faces and images."

Most recently in *United States v. Paroline*, 134 S. Ct. 1710 (2014), the Supreme Court explained:

> "The demand for child pornography harms children in part because it drives production, which involves child abuse. The harms caused by child pornography, however, are still more extensive because child pornography is 'a permanent record' of the depicted child's abuse, and 'the harm to the child is exacerbated by [its] circulation." *Id*. at 1716-17.

As this Court is aware, child pornography depicts real children being abused. One need only to read these children's victim impact statements to understand the horror of their past abuse and continuation of abuse by individuals trafficking and possessing child pornography.

12

Out of the one hundred and nineteen (119) identified series in the defendant's collection, eight (8) separate series containing a total of seventeen (17) different victims have requested restitution. The first victim, "Vicky," writes in her victim impact statement, "[t]hey are trading my trauma like treats at a party and it feels like I am being raped all over again by every one of them. It sickens me to the core. . .I can never feel safe so long as my images are out there; every time they are downloaded I am exploited again, my privacy is breached, and I feel in danger again." Doc. #142, Ex. #2.

The victim of the "Marineland" series writes in her victim impact statement, "Every time someone else sees pictures of videos of me it feel like they are [her abuser] and they just want to use me for their own pleasure. It is like I am just here for other people's pleasure." Doc. #143, Ex. #2. The children in these videos and images feel that their abuse never ends since people, like the defendant, continue to view it over and over again. They ask for the defendant be ordered to contribute their counseling, since his actions have aggravated their pain. Under the law, it is mandatory for the defendant to pay restitution to these victims for possessing their images.

One hundred and thirty-two (132) months in prison is an appropriate sentence in this case. The defendant was not just an avid and robust collector of child pornography, he has touched children in the past. This past "hands on" conduct, even if it is over twenty years old, has to be taken into account. It is aggravates and differs this defendant's situation from other offenders charged with Receipt of Child Pornography. Similarly situated defendants who were charged with Receipt, Transportation or Possession of Child Pornography and have committed hands on offenses in the past include: *United States vs. Kenneth Hutchings*, 4:15CR-0393 HEA

13

received 185 months in prison for Possession of Child Pornography, had a prior adjudication for sexual assault. *United States v. David Knapp*, 4:15CR0548 HEA received 168 months in prison for Possession of Child Pornography, had a prior state conviction for sexual misconduct with a child, *United States vs. Nathan Grund,* 4:15-CR0392 JAR, sentenced to 168 months in prison for Transportation of Child Pornography and Attempted Enticement of a Minor after sending child pornography to an undercover officer, admitted to police that he had sexual relations with a minor. *United States vs. Johnny Victoria*, 4:16CR0332 AGF, defendant sentenced to 180 months in prison for Receipt of Child Pornography, state allegations against him for child molestation pending at the same time as the federal child pornography case.

Further, the defendant's collection of child pornography contained horrific images of children being sexually abused. Defendant admitted to police that he had been looking at child pornography for approximately ten years before he was caught.

Due to the number of images in the defendant's child pornography collection, the nature of the images the defendant possessed, and the prior hands on offenses, the government believes imprisonment 132 months is appropriate in this case.

**D.** **To Afford Adequate Deterrence to Criminal Conduct and To Protect the Public from Further Crimes of the Defendant**

Reasonable yet firm sentences are necessary in these cases to reduce or eliminate the market for child pornography and to protect children from becoming victims to feed that market. As this Court is aware, and as is reflected in the number of cases occurring in this District alone, the number of child pornography cases has increased significantly over the last several years. Firm prison sentences are necessary to deter the downloading, viewing, possessing, collecting, and trading of child pornography.

A sentence of 132 months imprisonment followed by a term of life on supervised release serves as a just deterrent for criminal conduct for this particular defendant.  It also reasonably assures to protect the public from any further crimes. Further, the defendant should be ordered to pay reasonable and adequate, not nominal, amount of restitution to each of the victims that have requested restitution.

## **Conclusion**

The Government is requesting that the Court sentence the defendant to 132 months in prison.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*s/ Colleen C. Lang*
COLLEEN C. LANG, #56872MO
Assistant United States Attorney
111 S. 10th Street, Room 20.333
St. Louis, Missouri 63l02
(314) 539-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by email upon the following:

DAN JUENGEL
Attorney for the Defendant


*s/ Colleen C. Lang*
COLLEEN C. LANG, #56872MO
Assistant United States Attorney

16